**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

---

STEVEN SCOZZARI, as Personal
Representative of the Estate of WILLIAM
CHRISTI SCOZZARI, Deceased,

        Plaintiff,

vs.                                        Case No.
                                                   Hon.

CHIEF DWAYNE MIEDZIANOWSKI, individually,
OFFICER JEREMY McGRAW, individually,
jointly and severally,

        Defendants.

_____/

| | |
|---|---|
| Hugh M. Davis (P12555) | Roger A. Smith, P27722 |
| Cynthia Heenan (P53664) | Garan Lucow Miller PC |
| Constitutional Litigation Associates, P.C. | Attorney for Miedzianowski & McGraw |
| Attorneys for Plaintiff | 1111 W Long Lake Rd Ste 300 |
| 450 W. Fort Street, Suite 200 | Troy, MI  48098 |
| Detroit, Michigan 48226 | 248-641-7600/Fax: 248-641-0222 |
| 313-961-2255/Fax: 313-961-5999 | rsmith@garanlucow.com |
| conlitpc@sbcglobal.net | |

Robert D. Horvath (P27633)
Law Office of Robert Douglas Horvath
Co-Counsel for Plaintiff
2833 Crooks Rd Ste 104
Troy, MI  48084
248-614-4770/Fax: 248-822-3174
Rdhjdlo@aol.com

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

      Plaintiff, STEVEN SCOZZARI, as Personal Representative of the Estate of WILLIAM

CHRISTI SCOZZARI, deceased, by and through counsel for his cause of action on behalf of the

Estate of William Christi Scozzari against the two individual Defendants, jointly and severally, states as follows:

## Jurisdiction and Venue

1.	Plaintiff Steven Scozzari, the brother of Plaintiff's decedent William Christi Scozzari is a resident of the Township of Lake Orion, County of Oakland, State of Michigan. He is the duly appointed Personal Representative of the Estate of William Christi Scozzari, pursuant to an Order of the Clare County Probate Court and Letters of Authority which have been lawfully issued, empower him to bring this lawsuit versus the aforelisted Defendants.

2.	This action arises under 42 USC 1983. Jurisdiction is conferred by 28 USC 1331, 1343(3) and 1343(4).

3.	At all times relevant hereto, Plaintiff's decedent William Christi Scozzari was a resident of the City of Clare, County of Clare, State of Michigan.

4.	Defendant Dwayne Miedzianowski is and was at all times relevant hereto Chief of the City of Clare Police Department.

5.	Defendant Jeremy McGraw is and was at all times relevant hereto an officer of the City of Clare Police Department.

6.	At all times pertinent hereto, Defendants were employees of the City of Clare, acting within the scope of their employment under color of law, cloaked with the authority which was granted to them.

7.	Defendants are being sued in their individual capacities, jointly and severally.

8.	The cause of action arose in the City of Clare, County of Clare, State of Michigan. Venue is proper pursuant to 28 U.S.C. 1391.

**Common Allegations of Fact**

9. According to the dispatch records, one Jason Miller called the Clare County 911 at 11:05 p.m. on September 18, 2007, reporting that he thought he heard shots fired in the area of a lake north of the Lone Pine Motel in Clare, Michigan.

10. The Lone Pine Motel is a collection of different types of structures which provide everything from overnight stays to extended, even permanent, lodging.

11. William Scozzari had lived in a small cabin at the north end of the Lone Pine property for 7-10 years before September 18, 2008. He was a diagnosed schizophrenic on disability under the care of the Clare County Mental Health Department. He was hard of hearing, blind in one eye, had diminished sight out of the other eye and sometimes used a cane while walking. He was 5' 3" and weighed 113 pounds. Scozzari was obsessively reclusive and impossible to engage in conversation. He would not even allow his own parents into his cabin.

12. The possible "shots fired" complaint was first responded to by Defendant Clare Chief of Police Dwayne Miedzianowski (Chief). He arrived at a parking lot at McEwen and Wilcox Parkway within minutes, according to the dispatch log. The Chief was acting in a regular patrol capacity.

13. Defendant Clare Police Officer Jeremy McGraw (McGraw) also responded to the scene. He was dispatched at 11:07 p.m. He arrived on the scene at 11:14 p.m. On the way, he was called 2 to 4 times on his cell phone by the Chief, who was becoming increasingly agitated.

14. William Scozzari committed no crime. According to the Chief, he saw a flashlight coming from around east of the VFW hall. When Scozzari was between 10 and 15 feet away, Scozzari appeared to have a brown colored stick carried on his left shoulder. The Chief

3

ordered him to drop it and come over.  The Chief indicated that he could tell it was a stick, but claimed that he did not know that it was not a gun when he first ordered Scozzari to drop it.  The Chief at first claimed not to have a flashlight because he had been working days.  But, minutes later, a witness saw the Chief following Scozzari around the east side and front of cabin 19 carrying a flashlight.  Later, the Chief remembered he had a flashlight in the car.

15.     Scozzari's first response, according to the Chief, was to say "Fuck you, boy" and keep on walking.  All of the other witnesses indicated that Scozzari never verbally responded to any communication.

16.     The Chief admitted that if an officer did not have probable cause to believe a crime has been committed, a person can choose not to talk to the police and walk away.  He claimed that Scozzari's response did not bother him at all.

17.     But then the Chief claimed it became alarming to him that Scozzari might have committed the misdemeanor of being in the park after hours and there might be a gun in the backpack, which he thinks he saw Scozzari wearing.  There was no evidence of a backpack.  The Chief admitted that he had not seen Scozzari commit a misdemeanor.

18.     The Chief claims he exited his vehicle 15-20 feet from Scozzari to ask him to drop the stick and talk.  Scozzari walked past and the Chief followed at about 15 feet when he said, "Stop. Police. Put the stick down."  Scozzari yelled "Fuck you" and kept walking.  The Chief claims that he again requested that Scozzari stop.  But, according to the Chief, Scozzari only turned and said "Fuck you" and appeared to pull the stick back in his left hand.  The Chief claimed to have gotten closer because he wanted to keep track of where Scozzari was.  When

they were in the parking lot of the Lone Pine Motel and the Chief claimed to have lost sight of Scozzari for a minute as he went around the corner of the cabin.

19. The Chief fist said that they were probably 10 feet apart when Scozzari drew the stick back. The Chief ran around a truck. Scozzari did not follow him. The Chief went around the truck some more, yelling to drop the cane. Scozzari was cocking the cane. The Chief backed up, pulled his pepper spray and yelled "Drop the cane." Scozzari did not drop it, but came down with it. Scozzari's right hand began reaching to his waist and the Chief claimed to have pepper sprayed him, aiming at the face. The Chief does not know if he hit Scozzari with the pepper spray. But, that claim is contradicted by his police report and his report to City Manager Hibl, where he twice indicated hitting Scozzari with the pepper spray.

20. When the Chief claimed that Scozzari walked toward him, reaching into his waistband, the Chief ran around the truck and then saw what he thought was a knife in the waistband.

21. The Chief claims to have then pulled his gun, pointed it at Scozzari and yelled to put the knife back. Scozzari turned around and walked into cabin 17, breaking off the incident and closing the door.

22. The Chief claimed to have thought he had been assaulted, but admitted that Scozzari only cocked the cane, but did not try to hit him with it. There were no verbal threats.

23. Even if Scozzari was coming toward him, the Chief was at all times moving in such a way as to protect himself and Scozzari never rushed him. The Chief claimed to believe that the mere fact that Scozzari cocked his arm back and reached for a knife constituted the assault.

24.     McGraw arrived a couple of minutes after Scozzari went into the cabin.  The Chief first saw McGraw on the west side of cabin 17.  He briefed McGraw and then they walked around and did some investigation in the area.  The Chief did not remember encountering anyone while they were walking around, but McGraw did tell somebody to get back in their cabin.

25.     This claimed use of pepper spray by the Chief, never asserted anywhere until he generated his report some days later, is subject to question.  All knowledgeable witnesses, including the Chief, agree that pepper spray has a distinctive, intense and lingering smell.  No witness that was in proximity to Scozzari and his clothing at any time later ever reported or could remember any such smell.  McGraw denied it.

26.     Two of the three med techs denied smelling pepper spray on Scozzari or his clothes.  The other did not remember it.

27.     Parenthetically, there is no indication that Scozzari reacted in any way consistently with being pepper sprayed.  After his alleged initial confrontation with the Chief, he turned and walked directly into his cabin.  He had no time to change clothes or ameliorate the effects of pepper spray before the Chief and McGraw returned to arrest him.

28.     The report of MSP Trooper Amy Denher, who saw Scozzari at the hospital, indicated that Scozzari's pants were 4 or 5 times too large in size, making it unlikely that he could have a knife in the waistband.

29.     None of the independent witnesses claimed to have heard any confrontation, as described by the Chief, with Scozzari at any time prior to the events of the shooting itself, although they could clearly hear the final sequence.  The exception is Jason Miller, the person who made the original "possible shots fired" call.  He went out into the parking lot in front of his

room (No. 5) in a motel portion of the Lone Pine, which ran perpendicular to the line of cabins containing No. 17, but with a full view of Scozzari's cabin. He was curious to see what would come of his complaint. While he was in the parking lot, he heard from the north the following words "Get away kid" and "Knife". After that, he saw the Chief running south toward him from the north end of the Lone Pine premises, then circling around the parking lot to the north. There was no loud or prolonged confrontation. The voice was unidentified.

30. By the time McGraw had arrived, the "investigation" had focused on cabin 17. That was where he was supposed to find the Chief. He called the Chief on his cell phone and met him at cabin 17. They then walked around the Lone Pine and other unspecified areas, purportedly investigating the "possible shots fired" complaint and then turned their attention to Scozzari. On the way, according to McGraw's report and the independent witness Miller, the Chief said words to the effect "He's a mental, he's going to jail."

31. From that point on, McGraw was merely a pawn in the chain of command, acting on the orders of the Chief. According to McGraw, with the Chief standing off to the southwest, and with his taser at the ready, McGraw pounded on the door shouting "Open up. Police". There is no doubt that the purpose of the action was to get Scozzari out of his cabin and arrest him, not merely question him about the "shots fired" complaint.

32. After banging on the door three times and shouting, Scozzari opened the door and, according to McGraw, had weapons in his hands. McGraw admits that in addition to banging on the door, he also kicked it in order to push it open to see what Scozzari was doing inside. He successfully pushed it open a bit. Although the Chief denied any damage, the door jamb was in fact broken.

7

## COUNT I
## Illegal Detention and Unreasonable Seizures
## 42 U.S.C. §1983 Under the Fourth Amendment

33. Plaintiff incorporates by reference paragraphs 1 through 32 above as though fully stated herein, paragraph by paragraph, and word for word.

34. Plaintiff's decedent's constitutionally protected rights included the right to be free from unreasonable detention in public without probable cause or reasonable suspicion and to be secure in his home and his person against unreasonable searches and seizures as provided for by the Fourth Amendment, made actionable by 42 U.S.C. §1983.

35. The Chief's forcible detention of Scozzari after Scozzari refused to stop and speak to him when Scozzari had committed no crime and there was no reasonable suspicion that he had or was about to do so was a violation of Scozzari's rights.

36. The attempt by the Chief and McGraw to force their way into Scozzari's cabin or to force Scozzari to come out of his home to be arrested when Scozzazri had committed no crime was a violation of Scozzari's rights.

37. Even if Scozzari had assaulted the Chief, Defendants had no right to enter Scozzari's home to arrest him without a warrant in the absence of hot pursuit or other exigent circumstances.

WHEREFORE, Plaintiff prays this Honorable court enter Judgment against Defendants jointly and severally, in whatever amount is fair, just and equitable for the injuries and damages, compensatory and punitive, so wrongfully sustained by Plaintiff together with interest, costs and attorney fees under 42 U.S.C. §1988.

## COUNT II
### Excessive Force
### Under 42 U.S.C. §1983

38. Plaintiff incorporates by reference paragraphs 1 through 37 above as though fully stated herein, paragraph by paragraph, and word for word.

39. If, as the Chief claimed, he pepper sprayed Scozzari during their initial encounter because Scozzari refused to stop and speak to him, the use of pepper spray by the Chief was an unreasonable seizure in the form of excessive force under the 4th Amendment, made actionable by 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays this Honorable court enter Judgment against Defendants jointly and severally, in whatever amount is fair, just and equitable for the injuries and damages, compensatory and punitive, so wrongfully sustained by Plaintiff together with interest, costs and attorney fees under 42 U.S.C. §1988.

Respectfully submitted,

Constitutional Litigation Associates, P.C.

By: _s/Hugh M. Davis_____
Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Attorneys for Plaintiff
450 W. Fort Street, Suite 200
Detroit, Michigan 48226
313-961-2255/Fax: 313-961-5999
conlitpc@sbcglobal.net

Dated: September 16, 2010

9

## PLAINTIFF'S JURY DEMAND

Plaintiff, Steven Scozzari, as Personal Representative of the estate of William Christi Scozzari, deceased, by and through counsel, pursuant to MCR 2.508, demands a trial by jury in the above-captioned matter.

        Respectfully submitted,

        Constitutional Litigation Associates, P.C.

        By: __*s/Hugh M. Davis*_____
        Hugh M. Davis (P12555)
        Cynthia Heenan (P53664)
        Attorneys for Plaintiff
        450 W. Fort Street, Suite 200
        Detroit, Michigan 48226
        313-961-2255/Fax: 313-961-5999
        conlitpc@sbcglobal.net

Dated: September 16, 2010

*F:\Cases\Scozzari, Steve\Pldgs\USDC\NEW Complaint.doc*